MANHATTAN LIGHTERAGE CORPORA-
TION v. THE CORNELL NO. 21 et al.
THE GLOBE.

No. A-18087.

United States District Court
E. D. New York.

March 1, 1949.

Burlingham, Veeder, Clark & Hupper, of New York City (Stanley R. Wright, of New York City, of counsel), for libellant.

Kirlin, Campbell, Hickox & Keating, of New York City (John H. Hanrahan, Jr., of New York City, of counsel), for claimant.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y. (Herbert E. Ost, Sp. Asst. to U. S. Atty., and Gilbert S. Fleischer, Sp. Atty., Dept. of Justice, both of New York City, of counsel), for respondent.

BYERS, District Judge.

The libellant's stick lighter Globe was in contact with the stern of diesel tug Cornell No. 21, as the former was being towed out of the slip between Piers 54 and 56, N.R., by the diesel tug W.S.A. No. 22 around 5:00 p. m. on February 2, 1945, and the only dispute is whether the Cornell tug backed into the lighter. If not, the lighter struck the stern of the tug while the latter was nosing into the northerly side of the pier, about 30 feet from the river end.

The libellant has sued the tug and the Government which owned and operated the W.S.A. No. 22. The fact of damage is conceded, so that the agency thereof is the only subject of controversy.

The lighter had been taken in charge at Pier 59 by the W.S.A. No. 22, to be towed directly across the river to Pier 9 Hoboken, but the maneuver was difficult to accomplish because of the presence of heavy ice on the New York side of the river, an ebb tide of 1.2 knots' strength which set toward Pier 54, and a northwest wind of 35 miles force which had the same effect, since the lighter was unladen and had 8-foot exposed sides.

The Globe was taken out into the river from Pier 59, stern first, on a head line from the No. 22, the intention of the latter being to come alongside to port, rig bow, stern, and towing lines, and so proceed to destination. But the lighter got out of control because the tug's side fender caught on the lighter's corner, throwing the tug out of shape; the Globe got away and was carried by wind and tide into the slip north of Pier 54. There the tug overhauled her, and got alongside, backed and filled, finally circling in the slip to the tug's starboard side, and then the tow proceeded out of the slip, the lighter being on the tug's port side, and in that movement the striking occurred.

The testimony is convincing that a bow and towing line were made fast, but no one was called who could or would testify that the same was true of the stern line. Reilly, the captain of the No. 22, said that he could not see the stern line from his pilot house, and that it was handled by a deckhand. The name of the latter was not given, nor was he called, nor his absence explained.

The make-up of the tow as described by Reilly puts the bow of the tug some distance ahead of the forward end (the stern) of the lighter. Their respective dimensions were 100 by 30 feet for the lighter with 10-foot sides (she drew about 2 feet); W.S.A. No. 22, 81.1 by 24 feet, H.P. 700.

The housing of the lighter (living quarters, and engine house, 20 feet wide, 10 feet long, and 8 feet high) was a trifle forward

of the pilot house of the tug; thus the view from the port window of the tug's pilot house toward Pier 54 was obstructed, as this movement was under way, not only by the housing, but by a hoisting coop on the roof of the cabin, 7 feet high, 6 feet wide and 7 feet deep.

The Cornell tug had just landed a pontoon—a breasting off raft—100 by 4 feet, which it had taken on two lines from Pier 56, and these lines were transferred from the tug to the pier; the men who handled these lines were employed by the Cunard Line operating the pier.

Their last names were unknown to the Cornell tug's captain and they were not called as witnesses, and his testimony stands unrefuted, that they had not completed their task, and the tug was holding bow on against the pier, waiting for them to rejoin her for further shifting operations of another pontoon. The tug's engines were working slow ahead. This position of the tug was observed by Reilly, captain of the W.S.A. No. 22 as he moved out toward the river end of the slip.

The lighter's captain, Larson, is relied on to establish the fact that the tug actually backed into the Globe, and it is common ground that he called out to the Cornell tug to that effect immediately upon the taking place of the contact. He so testified, and both tug captains agree. This means that Larson then believed such to be the fact.

The balance of his testimony is so clearly disproved as to cast doubt upon the accuracy of the contemporaneous exclamation to which he gave vent.

He is shown to be wrong as to the place where the striking occurred, which he stated to be in the river off the slip; the position of the Cornell tug, and the make-up of the tow as then constituted. These discrepancies led to an eleventh hour change in answers to interrogatories, and in the Government's answer to the libel.

Larson was a sick man at the time of the trial, and his testimony, save as to his assertion at the time, must be disregarded.

As to his then opinion and belief, honestly held though it was, I think the same observation applies.

The movement under scrutiny was necessarily improvised as the result of the belated success on the towing tug's part in getting the lighter alongside.

Since the destination was opposite Pier 59, the heading from Pier 54, out of a 300-foot slip, had to be somewhat northwest into the wind, and across the tide which set at the pier end; to compensate that, Reilly says he maneuvered his steering wheel and his engine. This means that he headed out somewhat diagonally.

He says he passed 15 feet clear of the stern of the Cornell tug, which must mean that the starboard side of the lighter was that far off at some 30 feet or so from the pier end.

It will be seen that the extent to which the stern line from the tug to the Globe had then been hauled taut and made fast, would determine whether at the time of the passage the Globe was somewhat sagging away from the tug at her after end (bow as she was being towed). Since that element of proof is lacking, and having in mind the shape of the tow, I think it is more likely that the lighter struck the tug, than that the latter backed into the lighter.

The Cornell captain and engineer are emphatic in denying any reverse movement of the tug's engines at the time of impact, or for five minutes thereafter. Any skepticism as to this testimony is mitigated by the former's frank statement that he recalls the charge made at the time by the lighter's captain, to the effect above stated. It would have been convenient for him to have forgotten that, had he been so disposed; it is counted in his favor that he employed no such subterfuge.

Reilly's testimony that he heard an engine bell on the Cornell tug giving the backing signal, as he passed the latter, has not been overlooked. If he did, he should have blown an alarm, which he does not profess to have done.

He was separated from the other tug by nearly half his tug's beam, plus the width of the lighter (30 feet) plus 15 feet; also the housing on the lighter interposed its structure in the path of his hearing, and the northwest wind would carry sound away from, not toward him.

I regard this alleged observation as less than convincing.

In view of the entire testimony and the reasonable probabilities, I am of the opinion that the lighter struck the fantail of the tug, but that the latter did not back into the collision, as the tow moved out of the slip in the shape described, and that the libellant should have the usual interlocutory decree against the Government in personam, with costs; and that the libel against the Cornell No. 21 should be dismissed, also with costs.

Settle decree.

Findings are filed herewith.